# EXHIBIT A





Search for Cases by: Select Search Method... ▼

Judicial Links | eFiling | Help | Contact Us | Print          GrantedPublicAccess  Logoff KEVINHORMUTH

**2122-CC09676 - VERNON J ALLEN ET AL V WRIGHT MEDICAL GROUP ET AL (E-CASE)**

| Case<br>FV de Veader | Parties &<br>Attorneys | Docket<br>Entries | Charges, Judgments<br>& Sentences | Service<br>Information | Filings<br>Due | Scheduled<br>Hearings & Trials | Civil<br>Judgments | Garnishments/<br>Execution |

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending   ○ Ascending

Display Options: All Entries ▼

---

**11/18/2021** ☐ **Jury Trial Scheduled**
     **Scheduled For:** 10/24/2022;  9:00 AM ;  MICHAEL FRANCIS STELZER;  City of St. Louis

**11/17/2021** ☐ **Judge/Clerk - Note**
     Sopy of petition for Howard & Howard

**11/08/2021** ☐ **Summons Issued-Circuit**
     Document ID: 21-SMCC-14116, for WRIGHT MEDICAL TECHNOLOGY, INC..
     ☐ **Summ Issd- Circ Pers Serv O/S**
     Document ID: 21-SMOS-3155, for WRIGHT MEDICAL GROUP INC..
     ☐ **Confid Filing Info Sheet Filed**
          **Filed By:** BRIAN STOKES
     ☐ **Request Filed**
     Motion for Appointment of Special Process Server.
          **Filed By:** BRIAN STOKES
          **On Behalf Of:** VERNON J ALLEN, MELANIE ALLEN
     ☐ **Pet Filed in Circuit Ct**
     Petition.
          **Filed By:** BRIAN STOKES
     ☐ **Judge Assigned**

---

Case.net Version 5.14.27                    Return to Top of Page                    Released 11/09/2021

2122-CC09676

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

IN THE CIRCUIT OF THE CITY OF SAINT LOUIS
STATE OF MISSOURI

| | |
|---|---|
| VERNON ALLEN<br>MELANIE ALLEN<br><br>    Plaintiffs,<br>v.<br><br>WRIGHT MEDICAL GROUP, INC.,<br>a Delaware Corporation;<br>Serve:  Corporation Service Company<br>2711 Centreville Road, Suite 400<br>Wilmington, DE 19808<br>Service by New Castle County Sheriff<br><br>    and,<br><br>WRIGHT MEDICAL TECHNOLOGY, INC.,<br> a Delaware Corporation;<br>Serve:  CT Corportation System<br>120 South Central Avenue, Suite 400<br>Clayton, MO 63105<br>Service by Special Process Server<br><br>    Defendants. | )<br>)<br>)<br>)<br>) Cause #:<br>).<br>)  Division 1<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>) |

**PETITION**

For their causes of action, plaintiffs state:

**GENERAL ALLEGATIONS AS TO ALL COUNTS**

1.    The instant causes of action involve the following medical products (referred to collectively as "the ADVANCE® devices"):

    Wright Medical Technology ADVANCE® Total KNEE System

    1-ADVANCE® Splined Tibial Stem , Size 20mm x 60mm, Heavy Grit Surface, Lot # 127516263, Reference:  SPKT-2060 (right);

    1-ADVANCE® Biofoam Tibial Base, Size 4+, Lot #:   03852390601, Reference: KTSS-FM41;

1

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

1-ADVANCE® Primary Femoral, Size 4 Right, Surface Porous, Lot #038579224, Reference: KFTC-PC4R;

1-ADVANCE® Cancellous Bone Screw, Size: 6.5mm x 20mm, Lot#: 02858148, Reference: 7552-0020;

3-ADVANCE® Cancellous Bone Screw, Size: 6.5mm x 25mm, Lot#: 028551177, Reference: 7552-0025; and,

1-ADVANCE® Double High Tibial Insert, Size 4 Right, Thickness, 12mm, Lot #: 035203568, Reference: KIDH-412R.

2.   Defendant Wright Medical Group, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business at5 1023 Cherry Road, Memphis, Tennessee, does business in the State of Missouri without properly registering with the Secretary of State, in violation of Missouri law and, together with the other defendants, sells and distributes the ADVANCE® devices regularly and systematically in the State of Missouri and is a citizen of the States of Tennessee and Delaware.

3.   At all times, Defendant Wright Medical Group, Inc. was engaged in the business of designing, licensing, manufacturing, distribution, and selling, either directly or indirectly, through third parties, numerous prosthetic orthopedic products, including the ADVANCE® devices.

4.   At all times, Wright Medical Group, Inc. was the parent corporation of defendant Wright Medical Technology, Inc. and in that capacity Wright Medical Group, Inc. monitored adverse events and participated in the decision making process for the wholly-owned company defendants regarding adverse events.

5.   Defendant Wright Medical Technology, Inc. is a foreign corporation that manufactures, markets, and designs the ADVANCE® knee devices; is properly registered with the

2

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

Missouri Secretary of State to do business in the State of Missouri, with a Missouri Registered Agent and is a citizen of Delaware and Tennessee.

6.    At all times, Defendant Wright Medical Technology, Inc. was engaged in the business of designing, licensing, manufacturing, production, distribution, and selling, either directly or indirectly, through third parties, numerous prosthetic orthopedic products, including the ADVANCE® knee devices.

7.    Defendants failed to obtain full and proper Food and Drug Administration approval for the ADVANCE® total devices, instead, relied on Section 510(k), subjecting defendants to Missouri and other state law claims, and preventing preemption claims under Federal law.

8.    More specifically, defendants failed to obtain full and proper Food and Drug Administration approval for ADVANCE® Double High Tibial Insert, instead, relied on Section 510(k), thereby subjecting defendants to Missouri and other state law claims and preventing preemption claims under Federal law.

9.    Plaintiff Vernon Allen is a person who sustained injury when the defective Advance® knee devices were implanted into his right knee and leg and  were removed and replaced with insufficient replacement devices causing successive failures and prolonged recovery, pain and injuries and described herein.

10.    Plaintiff Melanie Allen is the wife of Vernon Allen.

11.    Plaintiff Vernon Allen became a customer of defendants and a user of defendants' products in Missouri.

12.    Prior to March 31, 2008, Vernon Allen had neither knowledge nor of any defect in the design, warning, labeling or manufacture of the ADVANCE® devices.

3

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

13.   Dr. Paul Lux is an orthopedic surgeon in Saint Louis, Missouri who had a business and contractual relationship with defendants.

14.   At all times involved herein, defendant paid and Dr. Paul Lux received "kick back" payments for the use of defendants' devices, including, but not limited to the ADVANCE® devices and entered into agreements with the United States Department of Justice regarding such agreements.

15.   On March 31, 2008, in Missouri, Dr. Paul Lux, removed Vernon's right knee, tibial plateau and meniscus and inserted the devices previously described into his body, leaving them implanted.

16.   Dr. Lux performed a procedure called a total knee replacement or TKA (for total knee arthroplasty).

17.   Upon information and belief, in Missouri, defendants supplied a mobile training lab that provided training, surgical cadavers, operating theaters, marketing and materials, and provided such items to Dr. Paul Lux.

18.   Dr. Paul Lux is licensed to practice medicine and is board certified by the State of Missouri as an orthopedist.

19.   On or about February 13, 2019, Doctor Lux determined that defendants' device failed due to a broken femoral component and catastrophic wear of the tibial polyethylene which was fractured through the posterior condyle.

20.   During all times prior to failure of the implant, Vernon Allen was engaged in a normal expected activity of daily living.

21.   On February 13, 2019, plaintiff was forced to undergo emergency surgery to remove the ADVANCE® knee device and use of non-defective implants.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

22. Upon information and belief, Dr. Paul Lux entered into contracts with defendants regarding payment, marketing, royalties and use of the ADVANCE® devices and defendants' other surgical products in Missouri and nationwide.

23. The ADVANCE® devices that were implanted into plaintiff Vernon Allen were in the same condition in all relevant respects as when it left defendants' control.

24. Defendants hired Dr. Paul Lux to advertise and market defendants' devices in Missouri and make representations on behalf of defendants that the defendants' prosthetics "would last twenty years and are easily replaced".

25. Doctor Paul Lux made public statements to plaintiff and others that the problems of "alignment, fixation and wear in joint replacements have been solved".

26. Further, Doctor Paul Lux made public statements to plaintiff and others that plaintiff can do sports, such as skiing, without risk or concern of the replaced knee "wearing out prematurely".

27. In addition, Doctor Paul Lux made public statements to plaintiff and others that if the tibial component became worn, it was not a big deal and would be a "fifteen minute procedure that is easy to fix with a patient returning to home the next day."

28. The aforementioned Missouri representations were not true.

29. At the time of the statements, Doctor Lux was acting as an agent of defendants and was in the course and scope of the agency.

30. As a result, venue is proper in Missouri.

31. Further, Missouri law is the proper choice of law.

32. Upon information and belief, defendants have admitted to paying "kickbacks" to physicians for the use of defendants' devices.

5

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

33.   Defendants Wright Medical Technology, Inc. and Wright Medical Group, Inc. acted as representatives, agents, employees, co-conspirators, servants, employees, partners, joint-venturers, franchisees, or alter-egos of the other defendants and were acting within the course and scope of their respective authority by virtue of their interrelationships and together in concert, and in coordination, as a joint venture as part of a common goal and scheme in all events described herein.

34.   The ADVANCE® devices were defective and their implantation into plaintiff's body caused severe injuries, which will be described below.  Defendants were negligent in design, manufacture and sale of the ADVANCE® devices in the manner set out below, and their negligence was a direct and proximate cause of the injuries and damages that are the subject of this Petition.

## APPLICABLE FEDERAL STATUTORY AND REGULATORY REQUIREMENTS

35.   Pursuant to Federal law, a medical device is deemed to be adulterate if it fails to meet established performance standards, or if the methods, facilities or controls used for its manufacture, packing, storage or installation are in conformity with federal requirements. 21 U.S.C. §351.

36.   Pursuant to federal law, a device is deemed to be misbranded when the labeling is false or misleading in any particular or if it is dangerous to health when used in the manner prescribed, recommended or suggested in the labeling. 21 U.S.C. §352.

37.   Pursuant to federal law, manufacturers are required to comply with FDA regulation of medical devices, including FDA requirements for records and reports, in order to prohibit introduction of medical devices that are adulterated or misbranded, and to assure the safety and effectiveness of medical devices. In particular, manufacturers must keep records and

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

make reports if any medical device may have caused or contributed to death or serious injury, or if the device has malfunctioned in a manner likely to cause or contribute to death or serious injury. Federal law also mandates that the FDA establish regulations requiring a manufacturer of a medical device to report promptly to FDA any correction or removal of a device undertaken to reduce a risk to health posed by the device, or to remedy a violation of federal law by which a device may present a risk to health. 21 U.S.C. § 360i.

38. Pursuant to federal law, the Secretary of Health and Human Services may prescribe regulations requiring that the methods used in, and the facilities and controls used for, the manufacture, pre-production design validation (including a process to assess the performance of a device but not including an evaluation of the safety or effectiveness of a device), packaging, storage, and installation of a device conform to current good manufacturing practice, as prescribed in such regulations, to assure that the device will be safe and effective and otherwise in compliance with federal law. 21 U.S.C. § 360j(f).

39. The regulations requiring conformance to good manufacturing practices are set forth in 21 CFR § 820 *et seq.* As explained in the Federal Register, because the Current Good Manufacturing Practice (CGMP) regulations must apply to a variety of medical devices, the regulations do not prescribe the details for how a manufacturer must produce a device. Rather, the quality system regulations provide a framework of basic requirements for each manufacturer to use in establishing a quality system appropriate to the devices designed and manufactured, and the manufacturing processes employed. Manufacturers must adopt current and effective methods and procedures for each device they design and manufacture to comply with and implement the basic requirements set forth in the quality system regulations.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

40.  Pursuant to 21 CFR § 820.1(c), the failure to comply with any applicable provision in Part 820 renders a device adulterated under section 501(h) of the Federal Food Drug & Cosmetic Act ("the Act"). 21 U.S.C. § 351.

41.  Pursuant to 21 CFR § 820.5, each manufacturer shall establish and maintain a quality system that is appropriate for the specific medical device designed or manufactured. "Quality system" means the organizational structure, responsibilities, procedures, processes, and resources for implementing quality management. 21 CFR § 820.3(v).

42.  Pursuant to 21 CFR § 820.22, each manufacturer shall establish procedures for quality audits and conduct such audits to assure that the quality system is in compliance with the established quality system requirements and to determine the effectiveness of the quality system.

43.  Pursuant to 21 CFR § 820.30(a), each manufacturer shall establish and maintain procedures to control the design of the device in order to ensure that specified design requirements are met.

44.  Pursuant to 21 CFR § 820.30(d), each manufacturer shall establish and maintain procedures for defining and documenting design output in terms that allow an adequate evaluation of conformance to design input requirements.

45.  Pursuant to 21 CFR § 820.30(e), each manufacturer shall establish and maintain procedures to ensure that formal documented reviews of the design results are planned and conducted at appropriate stages of the device's design development.

46.  Pursuant to 21 CFR § 820.30(f), each manufacturer shall establish and maintain procedures for verifying the device design to confirm that the device design output meets the design input requirements.

8

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

47.    Pursuant to 21 CFR § 820.30(g), each manufacturer shall establish and maintain procedures for validating the device design. Design validation shall be performed under defined operating conditions on initial production units, lots, or batches, or their equivalents. Design validations shall ensure that devices conform to defined user needs and intended uses and shall include testing of production units under actual or simulated use conditions.

48.    Pursuant to 21 CFR § 820.30(h), each manufacturer shall establish and maintain procedures to ensure that the device design is correctly translated into production specifications.

49.    Pursuant to 21 CFR § 820.30(i), each manufacturer shall establish and maintain procedures for the identification, documentation, validation or where appropriate verification, review, and approval of design changes before their implementation.

50.    Pursuant to 21 CFR §  820.70(a), each manufacturer shall develop, conduct, control, and monitor production processes to ensure that a device conforms to its specifications. Where deviations from device specifications could occur as a result of the manufacturing process, the manufacturer shall establish and maintain process control procedures that describe any process controls necessary to ensure conformance to specifications. Such process controls shall include:

a.    Documented instructions, standard operating procedures (SOP's), and methods that define and control the manner of production;
b.    Monitoring and control of process parameters and component and device characteristics during production;
c.    Compliance with specified reference standards or codes;
d.    The approval of processes and process equipment; and
e.    Criteria for workmanship which shall be expressed in documented standards or by means of identified and approved representative samples.

51.    Pursuant to 21 CFR § 820.70(b), each manufacturer shall establish and maintain procedures for changes to a specification, method, process, or procedure.

52.    Pursuant to 21 CFR § 820.70(c), each manufacturer shall establish and maintain procedures to

9

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

adequately control environmental conditions that could reasonably be expected to have an adverse effect on product quality, including periodic inspection of environmental control system(s) to verify that the system, including necessary equipment, is adequate and functioning properly.

53.    Pursuant to 21 CFR § 820.70(e), each manufacturer shall establish and maintain procedures to prevent contamination of equipment or product by substances that could reasonably be expected to have an adverse effect on product quality.

54.    Pursuant to 21 CFR § 820.70(g), each manufacturer shall ensure that all equipment used in the manufacturing process meets specified requirement and is appropriately designed, constructed, placed, and installed to facilitate maintenance, adjustment, cleaning and use.

55.    Pursuant to 21 CFR § 820.70(h), each manufacturer shall establish and maintain procedures for the use and removal of manufacturing material which could reasonably be expected to have an adverse effect on product quality to ensure that it is removed or limited to an amount that does not adversely affect the device's quality.

56.    Pursuant to 21 CFR § 820.70(i), when computers or automated data processing systems are used as part of production or the quality system, the manufacturer shall validate compute software for its intended use according to an established protocol.

57.    Pursuant to 21 CFR § 820.72, each manufacturer shall ensure that all inspection, measuring, and test equipment, including mechanical, automated, or electronic inspection and test equipment, is suitable for its intended purposes and is capable of producing valid results. Each manufacturer shall establish and maintain procedures to ensure that equipment is routinely calibrated, inspected, checked, and maintained.

58.    Pursuant to 21 CFR § 820.75(a), where the results of a process cannot be fully verified by subsequent inspection and test, the process shall be validated with a high degree of assurance

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

and approved according to established procedures. "Process validation" means establishing by objective evidence that a process consistently produces a result or product meeting its predetermined specifications. *See* 21 CFR § 820.3(z)(l).

59.    Pursuant to 21 CFR § 820.75(b), each manufacturer shall establish and maintain procedures for monitoring and control of process parameters for validated processes to ensure that the specified requirements continue to be met. Each manufacturer shall ensure that validated processes are performed by qualified individuals.

60.    Pursuant to 21 CFR § 820.90, each manufacturer shall establish and maintain procedures to control product that does not conform to specified requirements.

61.    Pursuant to 21 CFR § 820.100, each manufacturer shall establish and maintain procedures for implementing corrective and preventive action. The procedures shall include requirements for:

   a.    Analyzing processes, work operations, concessions, quality audit reports, quality records, service records, complaints, returned product, and other sources of quality data to identify existing and potential causes of nonconforming product, or other quality problems;

   b.    Investigating the cause of nonconformities relating to product, processes, and the quality system;

   c.    Identifying the action(s) needed to correct and prevent recurrence of nonconforming product and other quality problems;

   d.    Verifying or validating the corrective and preventative action to ensure that such action is effective and does not adversely affect the finished device;

   e.    Implementing and recording changes in methods and procedures needed to correct and prevent identified quality problems;

   f.    Ensuring that information related to quality problems or nonconforming product is disseminated to those directly responsible for assuring the quality of such product or the prevention of such problems; and

   g.    Submitting relevant information on identified quality problems, as well as corrective and preventative actions, for management review.

64.    Upon information and belief, pursuant to 21 U.S.C. § 351, the ADVANCE® devices are considered adulterated because, among other things, they failed to meet established performance standards, and/or the methods, facilities, or controls used for their manufacture,

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

packing, storage or installation are not in conformity with federal requirements. *See* 21 U.S.C. § 351.

65.    Upon information and belief, the ADVANCE® devices are considered misbranded because, among other things, they are dangerous to health when used in the manner prescribed, recommended or suggested in the labeling thereof. *See* 21 U.S.C. § 352.

66.    Upon information and belief, pursuant to 21 U.S.C. §351, the ADVANCE® devices are considered adulterated because there was no established CGMP for the ADVANCE® devices in accordance with 21 CFR § 820 *et sec.,* as set forth above.

67.    Upon information and belief, there was no established CGMP with respect to the quality audits, quality testing and process validation for of the ADVANCE® devices.

68.    As a result of the failure to establish and maintain CGMP as set forth above, the ADVANCE® devices were defective and failed, resulting in injuries to plaintiff.

69.    If defendants, either individually or collectively, complied with the federal laws and regulations, the ADVANCE® devices would have been manufactured properly such that they would not have resulted in injuries to plaintiff.

## COUNT I-NEGLIGENCE

For Count I, plaintiff Vernon Allen states:

70.    Br reference, plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set out herein and further alleges as follows:

71.    Defendants had a duty to exercise that degree of care that an ordinarily careful company would use when designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, and/or distributing medical implant devices into the stream of commerce, and to avoid harming those into whom the implants were placed.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

72.     Defendants breached the duty of care in the designing, researching, manufacturing, marketing, supplying, promoting, selling, testing, and/or distributing the ADVANCE® devices into interstate commerce.

73.     The ADVANCE® devices were dangerous when put to a reasonably expected use in the following respects:

    a.      The use of modular components did not properly support the implants and caused fractures;

    b.      The use of modular components caused excessive corrosion and wear;

    c.      The junctions between the modular components were not sufficiently supported;

    d.      The use of modular components did not allow normal weight bearing and stress activities and caused significant risk of fatigue, stress and/or fracture;

    f.      The use of modular components, in conjunction design, caused an excessive risk of revision, pain, failure, and/or fracture;

    g.      Improper manufacturing processes to allow the devices to withstand normal wear and reasonable loads;

    h.      Not designing the devices to allow sufficient cycles and/or wear;

    i.      The modular components possessed insufficient strength;

    j.      The modular components were made out of incorrect or insufficient materials;

    k.      The modular components were subject to micromotion and fretting corrosion that severely weakened the strength and viability of the implants; and;

    l.      The device was otherwise not sufficiently safe for use as intended.

74.     Defendants knew or should have known that when the ADVANCE® devices were surgically implanted, their customers were at risk for suffering implant fractures and

13

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

secondary injuries including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature physical pain and mental anguish, including diminished enjoyment of life, loss of consortium, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

75.  The ADVANCE® devices were put to a reasonably expected use.

76.  Defendants had no reason to believe that those for whose use the ADVANCE® devices were supplied and/or manufactured would realize the dangerous conditions.

77.  Defendants had information from which defendants knew or should have known of such dangerous conditions.

78.  Individually and collectively, defendants were negligent and careless and violated the duty of care in the following respects:

   a.  Negligently designing the ADVANCE® devices in a manner which was dangerous to those individuals who had the device surgically implanted;

   b.  Falsely representing that defendants' devices should last twenty years and are easily replaced;

   c.  Designing, manufacturing, producing, creating, and/or promoting the Pro-femur® devices without adequately, sufficiently, or thoroughly testing it;

   d.  Failing to conduct sufficient testing programs to determine whether or not the aforesaid ADVANCE® devices was safe for use;

   e.  Defendants herein knew or should have known that the ADVANCE® devices were unsafe and unfit for use by reason of the dangers to its users;

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

f.   Selling the ADVANCE® devices without making proper and sufficient tests to determine the dangers to its users;

g.   Negligently failing to adequately and correctly warn plaintiff of the dangers of the ADVANCE® devices;

h.   Negligently failing to recall their dangerous and defective ADVANCE® devices at the earliest date that it became known that the device was, in fact, dangerous and defective;

i.   Failing to provide adequate instructions regarding safety precautions surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant the ADVANCE® devices into their patients;

j.   Negligently advertising and recommending the use of the ADVANCE® devices despite the fact that defendants knew or should have known of its dangerous propensities;

k.   Negligently representing that the ADVANCE® devices offered was safe for use for its intended purpose, when, in fact, it was not safe and not safe as represented;

l.   Ignoring prior data about one, three and five year revision rates;

m.   Negligently manufacturing the Advance® devices in a manner which was dangerous to those individuals who had it implanted;

n.   Negligently producing the ADVANCE® devices in a manner which was dangerous to those individuals who had it implanted;

o.   Defendants under-reported, underestimated and downplayed the serious danger of the ADVANCE® devices;

15

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

p.    Paying "kickbacks" to surgeons as part of a common scheme to disguise the risks associated with defendants' devices; and

q.    Deviated from applicable federal regulations.

79.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the ADVANCE® devices in that they;

a.    Failed to use due care in designing and manufacturing the ADVANCE® devices so as to avoid the aforementioned risks to individuals that had the devices surgically implanted;

b.    Failed to accompany their product with proper warnings;

c.    Failed to accompany their product with proper instructions for use;

d.    Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the ADVANCE® devices;

e.    Deviated from applicable federal regulations, and

f.    Were otherwise careless and/or negligent.

80.    The ADVANCE® devices were dangerous to an extent beyond which would be contemplated by the ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that:

a.    The ordinary consumer would not contemplate that ADVANCE® devices would catastrophically fail in one-half of the advertised and represented life expectancy after implantation; and,

16

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

b.  The ordinary consumer would not contemplate that the ordinary activities of daily living would result in the ADVANCE® devices failing within less than one-half of the time that plaintiff was told and defendant advertised that it would last.

81.  Despite the fact that defendants knew or should have known that the ADVANCE® devices caused harm to individuals that had the device surgically implanted, defendants continued to market, manufacture, distribute and/or sell the ADVANCE® devices.

82.  Defendants knew or should have known that consumers such as the plaintiff would suffer foreseeable injury and/or be at increased risk of suffering injury as a result of the defendants' failure to exercise care, as set forth above.

83.  It was feasible for defendants to change the composition of the double high tibial insert to a different material or size.

84.  As a direct and proximate result of the defendants' negligence, plaintiff was damaged and suffered a catastrophic failure or the polyethylene component, suffered emergency surgery, removal of the ADVANCE® devices, total knee  arthroplasties, implantation of other devices, physical assistance and therapy, physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, loss of consortium, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

85.     As a direct and proximate result of defendants' negligence, plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages in an amount presently undetermined.

86.     As a direct and proximate result of defendants' negligence and carelessness, plaintiff was caused to incur medical expenses and will be caused to incur medical expenses in the future in amount that has not yet been determined.

87.     Defendants' conduct posed a substantial risk of harm to the general public.

WHEREFORE, plaintiff Vernon Allen prays for judgment in her favor and against defendants Wright Medical Technology, Inc. and Wright Medical Group, Inc. in an amount in excess of this court's jurisdictional minimum that is fair and reasonable to compensate him for his injuries and for such other relief as this Court deems just and necessary.

## COUNT II-STRICT LIABILITY (Manufacturing Defect)

For Count II, plaintiff Vernon Allen ("plaintiff" herein) states:

88.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

89.     The ADVANCE® devices were designed to rigorous specifications for performance, durability, integrity, safety and longevity on which the product being manufactured required that such standards be met as to those strict criteria.

90.     Defendants has a duty to place into the stream of commerce and to manufacture, distribute, market, retail, promote, and sell the ADVANCE® devices in a manner such that it was not defective and unreasonably dangerous when put to the uses for which it was manufactured, distributed, marketed and sold.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

91.   The ADVANCE® devices were frequently no manufactured according to design specifications and, therefore, failed as an unacceptable rate causing poor fit, premature wear, malalignment, tissue necrosis, bone loss, fracture of the components and the need for premature explant in patients such as plaintiff.

92.   At such time, the ADVANCE® devices were in a defective condition and unreasonably dangerous when put to a reasonably expected use in the following respects:

    a.   The use of modular components did not properly support the implants and caused fractures;

    b.   The use of modular components caused excessive corrosion and wear;

    c.   The junctions between the modular components were not sufficiently supported;

    d.   The use of modular components did not allow normal weight bearing and stress activities and caused significant risk of fatigue, stress and/or fracture;

    f.   The use of modular components, in conjunction design, caused an excessive risk of revision, pain, failure, and/or fracture;

    g.   Improper manufacturing processes to allow the devices to withstand normal wear and reasonable loads;

    h.   Not designing the devices to allow sufficient cycles and/or wear;

    i.   The modular components possessed insufficient strength;

    j.   The modular components were made out of incorrect or insufficient materials;

    k.   The modular components were subject to micromotion and fretting corrosion that severely weakened the strength and viability of the implants; and;

    l.   The device was otherwise not sufficiently safe for use as intended.

19

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

93.    The ADVANCE® device was defective in its manufacture and construction in that when it left defendants' hands it deviated from product specifications and/or applicable federal requirements described above for such medical devices, posing a serious risk of injury to the consumer into whom it would be implanted, including plaintiff and at all times herein it was foreseeable to defendants that plaintiff was a foreseeable user of the ADVANCE® devices.

94.    Plaintiff used the ADVANCE® devices in a manner reasonably anticipated.

95.    As a direct and proximate result of the defendants' negligence, plaintiff was damaged and suffered a catastrophic failure or the polyethylene component, suffered emergency surgery, removal of the ADVANCE® devices, total knee  arthroplasties, implantation of other devices, physical assistance and therapy, physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, loss of consortium, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

96.    As a direct and proximate result, plaintiff was damaged and suffered a loss of wages and will in the future suffer a diminished capacity to earn wages in an amount presently undetermined.

97.    As a direct and proximate result, plaintiff was caused to incur medical expenses and will be caused to incur medical expenses in the future in amount that has not yet been determined.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

98.   Had the ADVANCE® devices not been defective, plaintiff would not have sustained the injuries alleged herein.

99.   Plaintiff could not have discovered any defect in the ADVANCE® devices through the exercise of due care.

100.  Plaintiff did not have substantially the same knowledge as defendants.

WHEREFORE, plaintiff Vernon Allen prays for judgment in her favor and against defendants Wright Medical Technology, Inc. and Wright Medical Group, Inc. in an amount in excess of this court's jurisdictional minimum that is fair and reasonable to compensate him for his injuries and for such other relief as this Court deems just and necessary.

## COUNT III-STRICT PRODUCTS LIABILITY (Design Defect)

For Count III, plaintiff Vernon Allen ("plaintiff" herein) states:

101.  Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

102.  Individually and collectively, defendants sold, devised, marketed, manufactured, tested, distributed, and built the ADVANCE® devices.

103.  Defendants has a duty to place into the stream of commerce and to manufacture, distribute, market, retail, promote, and sell the ADVANCE® devices in a manner such that it was not defective and unreasonably dangerous when put to the uses for which it was manufactured, distributed, marketed and sold.

104.  At all relevant times, defendants expected the ADVANCE® devices it reach, and it did reach consumers, including plaintiff, without substantial change in the condition in which it sold.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

105. Defendants sold, devised, marketed, manufactured, tested, distributed, and built the ADVANCE® devices and are held to the level of knowledge as experts in their field.

106. At such time, the ADVANCE® devices were in a defective condition and unreasonably dangerous when put to a reasonably expected use in the following respects:

    a.    The use of modular components did not properly support the implants and caused fractures;

    b.    The use of modular components caused excessive corrosion and wear;

    c.    The junctions between the modular components were not sufficiently supported;

    d.    The use of modular components did not allow normal weight bearing and stress activities and caused significant risk of fatigue, stress and/or fracture;

    f.    The use of modular components, in conjunction design, caused an excessive risk of revision, pain, failure, and/or fracture;

    g.    Improper manufacturing processes to allow the devices to withstand normal wear and reasonable loads;

    h.    Not designing the devices to allow sufficient cycles and/or wear;

    i.    The modular components possessed insufficient strength;

    j.    The modular components were made out of incorrect or insufficient materials;

    k.    The modular components were subject to micromotion and fretting corrosion that severely weakened the strength and viability of the implants; and;

    l.    The device was otherwise not sufficiently safe for use as intended.

107. Plaintiff used the ADVANCE® devices in a manner reasonably anticipated.

108. The ADVANCE® devices had not been materially altered or modified prior to implantation of the devices.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

109. Plaintiff was a foreseeable user of the device  and the device was implanted into plaintiff for its intended purpose, a total knee replacement.

110. As a direct and proximate result, plaintiff was damaged and suffered a catastrophic failure or the polyethylene component, suffered emergency surgery, removal of the ADVANCE® devices, total knee  arthroplasties, implantation of other devices, physical assistance and therapy, physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, loss of consortium, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

111. As a direct and proximate result, plaintiff was damaged and suffered a loss of wages and will in the future suffer a diminished capacity to earn wages in an amount presently undetermined.

112. As a direct and proximate result, plaintiff was caused to incur medical expenses and will be caused to incur medical expenses in the future in amount that has not yet been determined.

WHEREFORE, plaintiff Vernon Allen prays for judgment in his favor and against defendants Wright Medical Technology, Inc. and Wright Medical Group, Inc. in an amount in excess of this court's jurisdictional minimum that is fair and reasonable to compensate him for his injuries and for such other relief as this Court deems just and necessary.

## **COUNT IV-STRICT PRODUCTS LIABILITY (Inadequate Warning)**

For Count IV, plaintiff Vernon Allen ("plaintiff" herein) states:

23

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

113.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

114.    Defendants designed, manufactures, tested, distributed and sold the ADVANCE® devices.

115.    At such time, the ADVANCE® devices were unreasonably dangerous when put to a reasonably expected use without knowledge of its characteristics in the following respects:

    a.    The use of modular components did not properly support the implants and caused fractures;

    b.    The use of modular components caused excessive corrosion and wear;

    c.    The junctions between the modular components were not sufficiently supported;

    d.    The use of modular components did not allow normal weight bearing and stress activities and caused significant risk of fatigue, stress and/or fracture;

    f.    The use of modular components, in conjunction design, caused an excessive risk of revision, pain, failure, and/or fracture;

    g.    Improper manufacturing processes to allow the devices to withstand normal wear and reasonable loads;

    h.    Not designing the devices to allow sufficient cycles and/or wear;

    i.    The modular components possessed insufficient strength;

    j.    The modular components were made out of incorrect or insufficient materials;

    k.    The modular components were subject to micromotion and fretting corrosion that severely weakened the strength and viability of the implants; and;

    l.    The device was otherwise not sufficiently safe for use as intended.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

116.    The ADVANCE® devices were defective and unreasonably dangerous when the knee implant described above left the defendants' possession and contained the following inadequate warnings of the following:

a.    The unreasonable risk of failure once implanted;

b.    The potential for premature wear,

c.    The excessively high rate of premature failure of the tibial component;

d.    That the ADVANCE® devices, when compared with other knee implant devices, has an excessive failure and revision rate and poses a greater risk to patients than other products;

e.    The promotional materials, labeling and instructional materials were misleading to consumers;

f.    That defendants were paying sums directly to doctors as a quid pro quo for the implantation of defendants' product into patients without regard to the appropriateness of the selection of implant devices versus other alternatives;

g.    That defendants and its ADVANCE® devices did not conform to the representations made by defendants concerning the product;

h.    Defendants' representations concerning the ADVANCE® devices did not conform to applicable federal requirements;

i.    Properly and appropriately disclose a financial interest of plaintiff's doctor and defendants.

117.    Plaintiff used the ADVANCE® devices in a manner reasonably anticipated.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

118.  Defendants sold, devised, marketed, manufactured, tested, distributed, and built the ADVANCE® devices and are held to the level of knowledge as experts in that field of prosthetic device.

119.  Defendants had a duty to warn consumers of the dangers associated with the ADVANCE® devices and failed to do so.

120.  The warnings that accompanied the ADVANCE® devices failed to provide that level of information that an ordinary consumer would expect when using the product.

121.  Had plaintiff received proper or adequate warning as to the risks associated with the use of the ADVANCE® devices from defendants, plaintiff would not have been implanted with defendants' ADVANCE® devices.

122.  As a direct and proximate result of the ADVANCE® devices being sold without an adequate warning, plaintiff was damaged and suffered a catastrophic failure or the polyethylene component, suffered emergency surgery, removal of the ADVANCE® devices, total knee arthroplasties, implantation of other devices, physical assistance and therapy, physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, loss of consortium, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

123.  As a direct and proximate result of the ADVANCE® devices being sold without an adequate warning, plaintiff was damaged and suffered a loss of wages and will in the future suffer a diminished capacity to earn wages in an amount presently undetermined.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

124.    As a direct and proximate result of the ADVANCE® devices being sold without an adequate warning, plaintiff was caused to incur medical expenses and will be caused to incur medical expenses in the future in amount that has not yet been determined.

WHEREFORE, plaintiff Vernon Allen prays for judgment in his favor and against defendants Wright Medical Technology, Inc. and Wright Medical Group, Inc. in an amount in excess of this court's jurisdictional minimum that is fair and reasonable to compensate him for his and for such other relief as this Court deems just and necessary.

## COUNT V-NEGLIGENT MISREPRESENTATION

For Count V, plaintiff Vernon Allen ("plaintiff" herein) states:

125.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

126.    Defendants knew or should have known that the ADVANCE® device that was implanted into plaintiff was defective and failed to comply with federal requirements for safe design and manufacture and/or was in other ways out of specification.  Yet, defendants negligently misrepresented to the plaintiff that the ADVANCE® device was safe and met all applicable design and manufacturing requirements.

127.    Plaintiff reasonably relied on defendants' misrepresentations and omissions concerning the safety of the ADVANCE® device to plaintiff's detriment.

128.    Defendants' representations induced plaintiff's medical choices, use of surgeon, and choice of implant and were material factors regarding the use of the ADVANCE® devices.

129.    As a direct and proximate result of defendants' negligent misrepresentations and omissions and/or failure to disclosed its violations of federal regulations and requirements, plaintiff was implanted with a Wright Medical ADVANCE® device and suffered serious physical

injury, harm, damage, and economic loss and will continue to suffer such harm, damages and economic loss in the future.

## COUNT VI-LOSS OF CONSORTIUM

For Count VI, plaintiff Melanie Allen states:

130.   Plaintiff Melanie Allen hereby incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

131.   As a direct and proximate result of defendants' acts and omissions, negligence and carelessness described herein, plaintiff Vernon Allen was caused to sustain injuries and damages as elsewhere alleged herein.

132.   As a direct and proximate result of the acts, omissions, negligence and carelessness of defendants as aforementioned, plaintiff Melanie Allen was caused to sustain loss of companionship, services, society and consortium of her husband, plaintiff Vernon Allen.

WHEREFORE, Plaintiff prays damages in a reasonable sum, together with her costs herein expended.

THE STOKES LAW OFFICE

Brian Stokes, MBE #43496
133 South 11th Street, Suite 350
St. Louis, Missouri 63102
(314) 621-6969 – Telephone
(314) 231-9552 – Facsimile
stokeslawoffice@yahoo.com
Attorney for Plaintiffs

**2122-CC09676**

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

In the
# CIRCUIT COURT
**City of St. Louis, Missouri**

For File Stamp Only

VERNON ALLEN, Et al.
_____
Plaintiff/Petitioner

November 8, 2021
_____
Date

vs.

WRIGHT MEDICAL TECHNOLOGY, INC., et al
_____
Defendant/Respondent

Case number
_____
1
_____
Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff _____, pursuant

Requesting Party

to Local Rule 14, requests the appointment by the Circuit Clerk of

Gary Tillman, 5025 Raymond Avenue,     Saint Louis, Missouri 63113-1628     (314) 593-7032

Name of Process Server        Address        Telephone

_____ _____ _____
Name of Process Server        Address        Telephone

_____ _____ _____
Name of Process Server        Address        Telephone

to serve the summons and petition in this cause on the below named parties.

SERVE:

Wright Medical Techology, Inc. c/o CT Corp Sys
_____
Name
120 South Central Avenue, #400, Clayton
_____
Address
Saint Louis, MO 63105
_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

SERVE:

_____
Name

_____
Address

_____
City/State/Zip

Appointed as requested:
**TOM KLOEPPINGER,** Circuit Clerk

By_____
    Deputy Clerk

_____
Date

Brian Stokes
_____
Attorney/Plaintiff/Petitioner
43496
_____
Bar No.
133 South 11th St. #350, St. Louis MO 63102
_____
Address
314-621-6969
_____
Phone No.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

**RULE 14 SPECIAL PROCESS SERVERS**

1. Any person appointed by the Court or the Circuit Clerk to serve process must have a license issued pursuant to this rule to serve process.

2. Licenses to serve process shall be issued by the Sheriff of the City of St. Louis if the applicant has met the following qualifications:

   a. Is twenty-one years of age or older;

   b. Has a high school diploma or an equivalent level of education;

   c. Has insurance coverage for any errors or omissions occurring in the service of process;

   d. Has not been convicted, pleaded guilty to or been found guilty of any felony, or of any misdemeanor involving moral turpitude; and,

   e. Has passed a training course for the service of process which shall be administered by the Sheriff of the City of St. Louis.

3. Each applicant for a process server license under the provisions of this rule shall provide an affidavit setting forth such person's legal name, current address, any other occupations and current telephone numbers.  Licensed process servers shall immediately notify the Sheriff of the City of St. Louis of any change in the above information, and the failure to do so shall constitute good cause for the revocation of such person's license.

4. The Sheriff of the City of St. Louis shall maintain a list of persons licensed to serve process pursuant to this rule, and shall make such list available to litigants upon request.

5. A photo identification card designed by the Sheriff of the City of St. Louis shall be issued in addition to the license.  No other identification will be allowed.  All licenses must be signed and approved by the Sheriff of the City of St. Louis and the Presiding Judge or his designee.

6. A license fee recommended by the Sheriff and approved by the Court En Banc shall be charged to cover the costs of compiling and maintaining the list of process servers and for the training of such process servers.  The license fees shall be made payable to the Sheriff of the City of St. Louis.

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

7. A license for service of process issued under this
   rule may be revoked by the Sheriff with the approval
   of the Presiding Judge or his designee, for any of
   the following reasons:

   a. Misrepresentation of duty or authority;

   b. Conviction, guilty plea or finding of guilty of
      any state or federal felony, or a misdemeanor
      involving moral turpitude;

   c. Improper use of the license;

   d. Making a false return; or

   e. Any other good cause.

   Provided, no service of process made by an appointed
   process server with a revoked license shall be void
   if the Court or Circuit Clerk made the appointment in
   good faith without knowledge of the license
   revocation.

8. Any person authorized to serve process may carry a
   concealed firearm as allowed by Section 506.145,
   RSMo, only while actually engaged in the service of
   process and only if the person has passed a firearms
   qualification test approved by a law enforcement
   agency; provided, however, that any licensed special
   process server may file a written waiver of the right
   to carry a concealed firearm and thereby avoid the
   requirements of firearm training and testing.  Any
   violation of this section shall be considered beyond
   the scope of the privilege to carry a concealed
   weapon that is granted by the appointment, and shall
   constitute good cause for the revocation of the
   license.

9. Applications for the appointment of a special process
   server shall be made on forms available in the
   offices of the Sheriff and Circuit Clerk.  Orders
   Appointing special process servers may list more than
   one licensed server as alternatives.

10. The licenses granted pursuant to this rule shall be
    good for two years.  Each person granted a license
    shall be required to reapply at the expiration of the
    license and shall be required to provide all the
    information required in the initial application,
    including a current police record check.

(Approved 9/28/92; amended 11/23/92; 5/31/95; 12/17/07)

**2122-CC09676**

Electronically Filed - City of St. Louis - November 08, 2021 - 11:22 AM

In the

# CIRCUIT COURT

## City of St. Louis, Missouri



For File Stamp Only

VERNON ALLEN, Et al.
_____
Plaintiff/Petitioner

November 8, 2021
_____
Date

vs.

WRIGHT MEDICAL TECHNOLOGY, INC., et al
_____
Defendant/Respondent

Case number
_____
1

Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  Plaintiff _____ , pursuant

Requesting Party

to Local Rule 14, requests the appointment by the Circuit Clerk of

Gary Tillman, 5025 Raymond Avenue,          Saint Louis, Missouri 63113-1628          (314) 593-7032
_____    _____    _____
Name of Process Server                        Address                                      Telephone

_____    _____    _____
Name of Process Server                        Address                                      Telephone

_____    _____    _____
Name of Process Server                        Address                                      Telephone

to serve the summons and petition in this cause on the below named parties.

SERVE:                                        SERVE:
Wright Medical Techology, Inc. c/o CT Corp Sys
_____               _____
Name                                          Name
120 South Central Avenue, #400, Clayton
_____               _____
Address                                       Address
Saint Louis, MO 63105
_____               _____
City/State/Zip                                City/State/Zip

SERVE:                                        SERVE:

_____               _____
Name                                          Name

_____               _____
Address                                       Address

_____               _____
City/State/Zip                                City/State/Zip

Appointed as requested:
**TOM KLOEPPINGER**, Circuit Clerk

Brian Stokes
_____
Attorney/Plaintiff/Petitioner
43496
By _____
Deputy Clerk                                  Bar No.
                                              133 South 11th St. #350, St. Louis MO 63102
                                              _____
11/8/2021                                     Address
_____              314-621-6969
Date                                          _____
                                              Phone No.



# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>MICHAEL FRANCIS STELZER | Case Number:  2122-CC09676 | |
|---|---|---|
| Plaintiff/Petitioner:<br>VERNON J ALLEN | Plaintiff's/Petitioner's Attorney/Address:<br>BRIAN STOKES<br>133 S 11TH STREET<br>SUITE 350<br>vs.   ST LOUIS, MO  63102 | |
| Defendant/Respondent:<br>WRIGHT MEDICAL GROUP INC. | Court Address:<br>CIVIL COURTS BUILDING | (Date File Stamp) |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | 10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:    WRIGHT MEDICAL GROUP INC.
                                   **Alias:**

SERVE: CORPORATION SERVICE CO                          **NEW CASTLE COUNTY, DE**
2711 CENTERVILLE RD STE 400
WILMINGTON, DE  19808

**COURT SEAL OF**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.
              **November 8, 2021**

**CITY OF ST LOUIS**

_____          _____
                 Date                                                    Clerk
Further Information:

---

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).


_____                _____
        Printed Name of Sheriff or Server                          Signature of Sheriff or Server

              **Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).
                    I am: (check one) ☐ the clerk of the court of which affiant is an officer.
                                        ☐ the judge of the court of which affiant is an officer.
                                        ☐ authorized to administer oaths in the state in which the affiant served the above
                                           summons. (use for out-of-state officer)
                                        ☐ authorized to administer oaths.  (use for court-appointed server)
        *(Seal)*
                                                            _____
                                                                    Signature and Title

| **Service Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  (_____miles @ $ _____ per mile) |
| **Total** | $_____ |

**See the following page for directions to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.



# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>MICHAEL FRANCIS STELZER | Case Number:  2122-CC09676 | |
|---|---|---|
| Plaintiff/Petitioner:<br>VERNON J ALLEN | Plaintiff's/Petitioner's Attorney/Address<br>BRIAN STOKES<br>133 S 11TH STREET<br>SUITE 350<br>ST LOUIS, MO  63102 | G TILLMAN<br>SPECIAL PROCESS<br>SERVER |
| | vs. | |
| Defendant/Respondent:<br> WRIGHT MEDICAL GROUP INC. | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  WRIGHT MEDICAL TECHNOLOGY, INC.
Alias:

CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
SUITE 400
CLAYTON, MO  63105

*COURT SEAL OF*

**SPECIAL PROCESS SERVER**

*CITY OF ST LOUIS*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**November 8, 2021**

_____
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                              Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
Date                                                                          Notary Public

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# Howard & Howard

### law for business·

| Chicago | Detroit | Las Vegas | Los Angeles | Peoria |

direct dial: 248.723.0496        Kimberlee M. Hersch        email: KHersch@HowardandHoward.com

**11/9/2021**

_**Via Electronic & First-Class Mail**_

**Copy Department**
**22nd Circuit Judicial Court**
10 N Tucker Blvd.
St. Louis, MO 63101

> Re:
> _**Requesting a copy of a petition in case #2122-CC09672**_

Dear Copy Department:

Please send me a copy of the petition filed on 11/8/2021 in case #2122-CC09672 (Allen v. Wright Medical Group). The copy can be e-mailed to khersch@howardandhoward.com or faxed to 248-645-1568.

Should you have any questions or concerns with regard to the same, please feel free to contact me. My direct dial is 248-723-0496.

Very truly yours,

**HOWARD & HOWARD ATTORNEYS PLLC**

Kimberlee M. Hersch
Kimberlee M. Hersch

Completed
11-10-21
MKB

IN THE STATE OF MISSOURI
TWENTY-SECOND JUDICIAL CIRCUIT
CITY OF ST. LOUIS

| | | |
|---|---|---|
| VERNON ALLEN and MELANIE ALLEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 2122-CC09676 |
| | ) | |
| WRIGHT MEDICAL GROUP, INC., and | ) | |
| WRIGHT MEDICAL TECHNOLOGY, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

**MOTION TO TRANSFER VENUE**

Defendant Wright Medical Technology, Inc. ("Wright Medical"),[1] by and through its undersigned attorneys, pursuant to Mo. Rev. Stat. § 508.010, hereby moves this Court to transfer venue from the Twenty-Second Judicial Circuit, City of St. Louis, to the Twenty-First Judicial Circuit, St. Louis County, and states as follows:

1.      On or about November 8, 2021 Plaintiffs Vernon Allen and Melanie Allen ("Plaintiffs") filed a Petition in the Twenty-Second Judicial Circuit Court, City of St. Louis, Missouri, Cause No. 2122-CC09676.

2.      In the Petition, Plaintiff Vernon Allen alleges that he sustained injuries from an allegedly defective knee implant designed, manufactured, marketed, and sold by Wright Medical. (*See generally* Pet.)

---

[1] Defendant Wright Medical Technology, Inc. is simultaneously filing a Notice of Removal to the Eastern District of Missouri.  Wright Medical makes this Motion to preserve the issue of venue should this case be remanded, giving the timing requirements for seeking venue transfer under Mo. Rev. Stat. § 508.010.

3.      Specifically, Plaintiff Vernon Allen alleges that he underwent a total knee replacement on March 31, 2008 where he received the medical devices at issue.  (Pet. ¶¶ 15-16.) Dr. Paul Lux performed the surgery.  (Pet. ¶ 15.)

4.      Plaintiff Vernon Allen claims that due to alleged defects in the devices, he subsequently underwent emergency surgery with Dr. Lux to remove and replace those devices on February 13, 2019.  (Pet. ¶¶ 19, 21.)

5.      In Missouri torts actions, venue is proper where the plaintiff was first injured.  *See* Mo. Rev. Stat. § 508.010(4) ("[I]n all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue shall be in the county where the plaintiff was first injured by the acts or conduct alleged in the action.").

6.      Under Missouri's venue statute, "[a] plaintiff is considered first injured where the trauma or exposure occurred rather than where symptoms are first manifested."  Mo. Rev. Stat. § 508.010(14); *see e.g., State ex rel. Mylan Bertek Pharm., Inc. v. Vincent*, 561 S.W.3d 68, 73-74 (Mo. Ct. App. 2018) (granting motion to transfer venue to county where decedent physically ingested opioids for the first time, rather than the county in which he was first prescribed opioids because "that is when his body was first exposed to the drug" and therefore, where he was injured).

7.      In this case, Plaintiff Vernon Allen alleges injuries stemming from implantation and removal of his knee replacement devices during surgeries that were both performed by Dr. Paul Lux.  (Pet. ¶¶ 15-16, 19.)

8.      Upon information and belief, Dr. Lux is currently retired, but prior to his retirement was an orthopedic surgeon with affiliations at three area hospitals – Missouri Baptist Hospital, Barnes Jewish West County Hospital, and Des Peres Hospital.[2]

9.      All three of these hospitals are located in St. Louis County, and are not within the geographic limits of the City of St. Louis.

10.     As a result, given that Dr. Lux was Plaintiff Vernon Allen's surgeon for both Plaintiff's index and revision surgeries, it is likely those surgeries were performed in St. Louis County, not St. Louis City.

11.     Therefore, in accordance with Mo. Rev. Stat. § 508.010(4), venue is proper in St. Louis County, where Plaintiff Vernon Allen likely received the medical devices at issue and was thus "first injured" by Wright Medical.

12.     None of the actions or injuries giving rise to Plaintiffs' claims are alleged to have occurred in the City of St. Louis, where this case is currently pending.

13.     As a result, Wright Medical respectfully asks the Court to transfer this matter to St. Louis County where venue is proper under Mo. Rev. Stat. § 508.010(4).

WHEREFORE, Wright Medical therefore respectfully requests an Order transferring this case from the Twenty-Second Judicial Circuit, City of St. Louis, to the Twenty-First Judicial Circuit, St. Louis County.

---

[2] Wright does not yet have access to Plaintiff Vernon Allen's medical records, and therefore makes this good faith representation about the likely location of the surgeries at issue based on Dr. Lux's surgical practice locations.

Respectfully submitted,

Dated: December 9, 2021                    GREENSFELDER, HEMKER & GALE, P.C.


By:   /s/ Kevin F. Hormuth
            Kevin F. Hormuth, No. 48165 MO
            kfh@greensfelder.com
            David P. Niemeier, No. 50969 MO
            dpn@greensfelder.com
            10 South Broadway, Suite 2000
            St. Louis, Missouri 63102
            Telephone: (314) 241-9090
            Facsimile: (314) 241-8624

            *Attorney for Defendants Wright Medical
            Technology, Inc. and Wright Medical Group, Inc.*


## CERTIFICATE OF SERVICE

The undersigned certifies that on this 9th day of December, 2021, the foregoing document was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system and by email upon all counsel of record.

Brian Stokes, Esq.
The Stokes Law Office
133 South 11th Street, Suite 350
St. Louis, Missouri 63102
tokeslawoffice@yahoo.com

*Attorney for Plaintiffs*

                  /s/ Kevin F. Hormuth

1928782

4

IN THE STATE OF MISSOURI
TWENTY-SECOND JUDICIAL CIRCUIT
CITY OF ST. LOUIS

VERNON ALLEN and MELANIE ALLEN,    )
                                   )
            Plaintiffs,            )
                                   )
vs.                                )    Case No. 2122-CC09676
                                   )
WRIGHT MEDICAL GROUP, INC., and    )
WRIGHT MEDICAL TECHNOLOGY, INC.,   )
                                   )
            Defendants.            )

**[PROPOSED] ORDER**

Having reviewed Defendant Wright Medical Technology Inc.'s Motion to Transfer Venue

from the Twenty-Second Judicial Circuit, City of St. Louis, to the Twenty-First Judicial Circuit,

St. Louis County, the Court, for good cause appearing hereby GRANTS the Motion and transfers

venue to St. Louis County.

**SO ORDERED**, this ___ day of _____, 202__.


_____





Case.net  |  Courts Home  |  My Account  |  eFiling Info

log out kevinhormuth
- 48165

**File on Existing Case Confirmation**

Thank you for your submission on **12/9/21 at 12:55 PM**. Below is important information regarding this submission. You will receive e-mails from the eFiling System regarding the status of your submission. This page is printer friendly.

If you need to contact the clerk about this submission or if you need to submit another filing and you do not have the case number, please use the following.

**eFiling Confirmation Number:**  EF25488423

The following information and documents were submitted with this filing.

**Filer Reference Number:**  None entered by filer

**No filing fee or payment information on this filing.**

Case

**Court Case Number:** 2122-CC09676

**Court Case Description:** VERNON J ALLEN ET AL V WRIGHT MEDICAL GROUP ET AL

Personal Injury-Product Liability filed in St Louis City - Circuit Court

**Notes to Clerk:**  None entered by filer

Document

**Motion to/for - Transfer (motion)**

Motion to Transfer Venue

  **Attachments**

   Electronic Filing Certificate of Service

**Filed on behalf of:**   WRIGHT MEDICAL TECHNOLOGY, INC.

eService

| **Party** | **Service E-mail Address** |
|---|---|
| BRIAN  STOKES, Attorney for Plaintiff | stokeslawoffice@yahoo.com |

EFILINGMENU

eFiling Version 1.5.51

Released 09/24/2021